IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.                                                  25-CR-6114-CJS

STUART J. MCHENRY,

            Defendant.

## RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The government has received the Defendant's Sentencing Memorandum and Supporting Exhibits (Dkt. 26) and maintains the position that a significant sentence of imprisonment is necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The sentence imposed must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The defendant's memorandum portrays him as a law-abiding citizen who made a shameful mistake and, when caught, fully cooperated with and assisted law enforcement. That is not the case. Rather, the defendant continues to minimize the seriousness of his actions, misleads the Court, does not believe the offense is serious enough to warrant any imprisonment but rather the embarrassment and loss of his job is punishment enough.

### The Defendant Engaged in Serious Conduct That Harms Real Children

The defendant claims, despite a mountain of evidence to the contrary, that he does not "have an affinity for" children and never has. (Dkt. 26 at p. 49). While he admits an addiction to adult pornography and how it has destroyed his life, he makes no mention of the children

whose sexual abuse he sought out and traded with others for his own gratification.

The defendant, who worked more than a decade in law enforcement, was an avid Kik user and spent time in chats with other Kik users seeking sexual gratification.[1] The defendant traded hundreds of videos and images of adult and child pornography with numerous other users. These videos images include dozens of videos and images of teens, preteens, and prepubescent girls posing, masturbating, and being sexually abused (being subjected to vaginal and oral sex). The forensic analysis of the defendant's electronic accounts showed that he regularly installed and uninstalled the Kik application in an apparent attempt to hide his activities. In fact, when law enforcement seized and searched his phone, there were no images or videos of child pornography on the device. However, through forensic evaluation of the device and the defendant's iCloud account, investigators were able to uncover what he was hiding, which involved trading images and videos of child pornography, including actively engaging with other Kik users about how arousing the images were. He offers to send and does send others what he identifies as his most taboo video: a video of a young girl (approximately 6 years or less) in which an adult male masturbates in front of her, places his penis in her mouth, ejaculates on her face, and the young girl then asks what it is. The defendant also asked other users for father/daughter content on numerous occasions (for example, "Any little daughters with dad being used??"). The defendant also possessed a video of an adult male having vaginal intercourse with a prepubescent girl (who appears approximately 9-12 years old) during which the adult male has his hand around the girl's throat and at one point asks, "whose pussy is this?" to which the girl responds, "it's yours

---

[1] The government will provide examples of the defendant's Kik chats to the Court and defense under separate cover; accompanying images and videos are available for review upon request.

daddy."

The defendant was not a passive observer who accidentally stumbled on child pornography. He actively sought it out. And when he found what he was looking for, he expressed his approval kept asking for more and asked for younger.

It bears repeating that this is not a victimless crime. The defendant's "most taboo" video of the young girl being ejaculated on turns out to be "Violet" from the "At School" series. As described in the PSR and the victim impact statement, "Violet" was sexually abused between the ages of four and eight. "Violet" recalled being sexually victimized between 20-25 times. This included being forced to perform oral sex on a male, being digitally penetrated, and the male attempting to rape her. As "Violet's" parents said in their victim impact statement, "the despicable images and videos will forever be available to a person who seeks and finds pleasure in abusing children . . . . Our daughter is a child whom does not deserve to be exploited day after day by everyone that has these images of her."

As this Court is aware, the trauma of the children depicted in the child pornography the defendant possessed doesn't end at the conclusion of the abuse. Those images and videos resulted from the rape and sexual abuse of real children by sexual predators. Child pornography permanently records this abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting these children in future years. As recognized by Congress, the sexualization and eroticization of children through any form of child pornographic images has a harmful effect on all children by encouraging a societal perception of children as sexual objects, which may lead to further sexual abuse and exploitation of them.

3

### The Defendant Misrepresents Himself as Cooperative and Forthcoming with Law Enforcement

In paragraphs 35 and 36 of the defendant's memorandum, he represents that he has been cooperative with law enforcement. While his cooperation is not required – indeed he has a right to remain silent – because the defense raised the issue, the government must correct the record.

Specifically, the defendant claims: he "was forthcoming regarding all the areas of inquiry made by the agents. He provided all the requested hardware, passwords, and indicated where the agents would find the material for which they were searching. He willingly admitted his problem and expressed an interest in seeking help to deal with it. He never invoked his Miranda rights." (Dkt. 26 at ¶ 36). These claims are simply false.[2,3]

On October 18, 2024, NYSP Investigator Chad Martin and other officers, took the defendant into custody from his patrol car in his driveway. Pursuant to the search warrant, they took his cell phone from his person. They took him to an interview room, and he waived his Miranda rights and initially agreed to speak with investigators. The interview was recorded, and the recording can be provided to the Court upon request. During the interview, the defendant lied to investigators and declined to provide the password to his phone. He denied any knowledge of or ever possessing child pornography. When asked for his email addresses, he provided a yahoo.com and gmail.com address, but he did not provide any

---

[2] As an initial matter, it is unclear whether the defendant is claiming he was cooperative on October 18, 2024, when New York State Police (NYSP) executed a search warrant at his home, took his cell phone pursuant to a search warrant and interviewed him, or later on March 21, 2025, when the FBI arrested him. In either event, they are false. As described herein, the defendant's phone was taken by NYSP on October 18, 2024, and he was interviewed on that date. The FBI did not search the defendant's phone, nor did they interview him.
[3] The following information is based upon my conversations with New York State Police Investigator Chad Martin, who conducted the search and interview, and FBI Special Agent Xavier DeLuke, who arrested the defendant.

protonmail email addresses.[4] When specifically asked if he used protonmail or knew what it was, he said no. When asked if he ever used Kik, he said no. After investigators eventually told the defendant what evidence they had that he had accessed child pornography, the defendant decided to end the interview.

So he was *not* "forthcoming regarding all the areas of inquiry made by the agents"; he lied. He did not "provide[] . . . the requested . . . passwords"; he refused to. He did not "indicate[] where the agents would find the material for which they were searching"; he denied all knowledge of the material law enforcement was looking for and denied ever using the app or email platform that would lead agents to the material. He did not "admit[] his problem" let alone "express[] an interest in seeking help to deal with it." And, once he realized the jig was up, he did "invoke[] his Miranda rights."

### The 3553(a) factors support the imposition of a significant sentence of imprisonment followed by a lengthy term of supervised release

In reviewing the Section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court to particularly consider the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, and the need for deterrence, as well as to protect the public from further crimes. See Title 18, United States Code, Sections 3553(a)(1) and (a)(2). Based upon the factors discussed in the PSR, the government asks the Court to impose a sentence of incarceration within the high

---

4 According to NYSP computer forensics analyst Samuel Thomson, protonmail is a known platform people use to hide their identity, and it was the email address associated with the Kik account the defendant used to trade child pornography.

end of the guidelines range as part of the sentence in this matter.

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the § 3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 180 (2010) (quoting *United States v. Gall*, 552 U.S. 38, 49-50 (2007)); *see also*, *United States v. Aumais*, 656 F.3d 147 (2d Cir. Sept. 8, 2011). In *Aumais*, the Second Circuit upheld the guidelines sentence imposed by the district It court, noting that the sentence was based upon an "individualized assessment" of the § 3553(a) factors. *Aumais*, at 157.

In this case, an "individualized assessment" of this defendant supports a significant sentence of imprisonment followed by a lengthy period of supervised release. The fact that the defendant worked closely with children, including children with special needs, makes his conduct all the more troubling. Children are among the most vulnerable of victims. With his experience as a teacher, the defendant should understand just how heinous and harmful the sexual abuse memorialized in the child pornography he sought out is.

In light of the information in the PSR, an individualized assessment of the §3553 factors, the harm to the victims, and the facts of the case, a significant prison sentence followed by a lengthy term of supervised release is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence.

DATED:   Rochester, New York, January 13, 2026

                                        MICHAEL DIGIACOMO
                                        United States Attorney

BY: <u>*s/Katelyn M. Hartford*</u>
KATELYN M. HARTFORD
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York 14614
(585) 399-3945
Katelyn.Hartford@usdoj.gov

7